IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---------------------------------------------------------------X
GALISSAS TRADING S.A.                                  :          22-CV-_____
AND ZEUS LINES MANAGEMENT S.A.           :
                                                                          :          IN ADMIRALTY
  Petitioner                                              :
v.                                                                         :
                                                                          :
UNITED STATES OF AMERICA,                         :
                                                                          :
  Respondent.                                         :
---------------------------------------------------------------X

## PLAINTIFFS' COMPLAINT AND EMERGENCY PETITION TO COMPEL REINSTATEMENT OF DEPARTURE CLEARANCE AND ASSOCIATED RELIEF

**COMES NOW**, Petitioners GALISSAS TRADING S.A. ("Galissas Trading") as Owner of the M/T GALISSAS ("the Vessel") and ZEUS LINES MANAGEMENT S.A. ("Zeus") as Managers of the Vessel, (collectively "Petitioners"), by and through undersigned counsel, and files this Emergency Petition against Respondent UNITED STATES OF AMERICA ("Respondent" or "the government"), seeking an Order compelling the Reinstatement of the Vessel's Departure Clearance consistent with the obligations contained in the March 18, 2022 Agreement on Security, and in the alternative, declaring, *inter alia*, the March 18, 2022 Agreement on Security void *ab initio*; directing the return of the USD 1,500,000 surety bond to Petitioners; finding the government in breach of the Agreement and awarding damages to Petitioners; and granting Petitioner Galissas Trading compensation for the losses, expenses, damages, and costs incurred as a result of the government's unreasonable delay of the M/T GALISSAS pursuant to 33 U.S.C. § 1904(h). In support of this action, Petitioners state as follows:

## THE PARTIES

1. Petitioner Galissas Trading is a foreign corporation with a registered office address in Monrovia Liberia. Galissas Trading is the owner of the M/T GALISSAS (IMO #9397781) ("the Vessel"). The Vessel is the only fee earning asset of Galissas Trading.

2. Petitioner Zeus is a Liberian company with offices at 48, Posidonos Avenue, Athens, Glyfada, 16675. Zeus is the manager of the Vessel.

3. The Respondent is the United States of America.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction as this is an admiralty and maritime claim for breach of a maritime contract in accordance with 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1333, and in accordance with 33 U.S.C. § 1904(h).[1]

5. In addition, this Emergency Petition states claims for declaratory judgment pursuant to 28 U.S.C. § 2201, seeking *inter alia*, an Order compelling the Reinstatement of the Vessel's Departure Clearance consistent with the obligations contained in the March 18, 2022 Agreement on Security, and in the alternative, declaring, *inter alia*, the March 18, 2022 Agreement on Security void *ab initio* and directing the return of the USD 1,500,000 surety bond to Petitioners.

6. Venue is proper with respect to any dispute arising under the maritime contract at issue, *i.e.* the Agreement on Security, which states at paragraph 1, lines 75-79, that "Any dispute

---

[1] *See Nederland Shipping Corp. v. United States of America*, No. 20-2269, 2021 U.S. App. LEXIS 33920, at *21 (Nov. 16, 2021) (concluding that the district court had admiralty jurisdiction over Plaintiff's breach of contract claim against the United States of America pursuant to the Court's admiralty jurisdiction and that the district court also has federal question subject matter jurisdiction over the statutory claim for which the United States has waived sovereign immunity).

between the United States and Owner or Operator regarding payment under this paragraph shall be submitted to the United States District Court for the District of Rhode Island. In any such dispute wherein one party claims a breach of the terms and conditions herein, the party asserting that there has been a breach of the Agreement shall bear the burden of proof." A copy of the March 18, 2022 Agreement on Security is attached hereto as **Exhibit 1**.

## FACTS AND PROCEDURAL BACKGROUND

### *The Vessel*

7. The M/T GALISSAS, is a 29,924 metric ton, chemical / oil products tanker built in 2008.

8. At all relevant times, the Vessel operated under the watchful eye of the Panamanian Flag Administration.[2] The Vessel's classification society was and is American Bureau of Shipping.[3]

9. At all relevant times, the Vessel operated in accordance with a Safety Management System that was reviewed, approved and certified by the classification society.[4]

10. At all relevant times, the Vessel was managed by Zeus, pursuant to a contract with Galissas Trading and in accordance with the International Management Safety ("ISM") Code.[5]

---

[2] "[T]he law of the flag doctrine ... provides that a merchant ship is part of the territory of the country whose flag she flies, and that actions aboard that ship are subject to the laws of the flag state." *United States v. Jho*, 534 F.3d 398 (5th Cir. 2008).

[3] A classification society is a non-governmental organization that establishes and maintains technical standards for the construction and operation of ships and offshore structures. *See* http://www.iacs.org.uk/.

[4] "Safety Management Certificate means a document issued to a vessel which signifies that the responsible person or its company, and the vessel's shipboard management operate in accordance with the approved safety management system." 33 CFR § 96.120.

[5] The ISM Code is an international standard for the safe management and operation of ships and for pollution.

### *Detention of the Vessel*

11. The GALISSAS arrived in Rhode Island from Rotterdam, The Netherlands to discharge cargo.

12. On February 20, 2022, U.S. Coast Guard officers attended onboard to conduct a Port State Control Inspection of the Vessel. During the Port State Control Inspection, alleged deficiencies were identified by Coast Guard personnel and the Vessel was detained. The U.S. Coast Guard performed and completed its investigation on board the Vessel between February 20, 2022 – March 7, 2022.

13. Agents removed and took possession of numerous vessel logs, records, documents, materials, and computers as evidence pursuant to the Coast Guard's purported agency authority. The Coast Guard boarding team exercised immediate control over the Vessel; including taking over control of the Vessel's crew and the engine room.

14. Upon information and belief, Coast Guard officers and agents, including agents from the Coast Guard Investigative Service ("CGIS")[6], boarded to perform a further criminal investigation.

15. On or about March 7, 2022, the U.S. Coast Guard Commander of Sector Southeastern New England issued a letter informing Petitioners that the Vessel's customs clearance was being withheld pursuant to 33 U.S.C. § 1908(e) and that the matter was referred to the U.S. Department of Justice. A copy of the USCG Letter is attached hereto as **Exhibit 2**.

---

prevention. *See* www.imo.org.

[6] The Coast Guard Investigative Service is a federal law enforcement agency established to carry out the Coast Guard's internal and external criminal investigations. *See* https://www.uscg.mil/Units/Coast-Guard-Investigative-Service/.

16. The Captain of the Port Letter identified that the Vessel's customs departure clearance would be reinstated upon "filing a bond or other surety satisfactory to the Secretary of Homeland Security." *Id*.

17. To return the Vessel to service and to continue her journey and trade, Plaintiffs had two (2) options: (1) concede to the Coast Guard's form Agreement on Security, or (2) leave the Vessel and the crew in the District and afloat in Narragansett Bay through the duration of the proceedings.

18. As an inducement for Plaintiffs to enter into the Agreement on Security, the government promised to expedite the investigation and subsequent proceedings. *See, inter alia,* Exhibit 1, at Clause 4.

19. Coast Guard District 1 Legal was the point of contact for the Agreement on Security. The terms are set by Coast Guard Headquarters and everything other than that amount of the surety bond and the daily per diem for the detained crew members are non-negotiable.

20. On or about March 18, 2022, Plaintiffs and Defendant executed and signed an Agreement on Security (hereinafter the "Agreement"). *See* Exhibit 1.

21. At Defendant's request and insistence, Plaintiffs jointly posted a Surety Bond in the amount of $1,500,000 as security for any adjudicated potential fines and/or penalties, as well as agreed to numerous other terms, most of which being wholly unreasonable. *Id*. at ¶1.

22. On March 18, 2022 at or about 5:11 pm, Defendant received an electronic copy of the Surety Bond. The original was delivered to the Coast Guard on Monday, March 21, 2022 at or about 10:00 AM. The surety bond was issued by United States Fire Insurance Company in the amount of USD 1,500,000 on March 18, 2022. A copy of the Surety Bond is attached hereto as **Exhibit 3**.

23. Once the government received the signed Agreement and the Surety Bond, the government was contractually obliged to promptly return and/or ensure the prompt return of the Vessel's departure clearance.

24. Specifically, paragraph 1 of the Agreement provided as follows, "When the U.S. Coast Guard receives the Surety Bond, and upon receipt of an executed copy of this document, the U.S. Coast Guard **will promptly** notify U.S. Customs that departure clearance of the Vessel may be granted as it relates to the violations alleged in the U.S. Coast Guard's letter to the Master of the Vessel dated March 7, 2022." *Id*., at lines 35-39.

### *The Detained Crew and Delay of the Vessel*

25. The Agreement on Security required the following: "[a]t the request of the U.S. Coast Guard acting on behalf of the United States, the ship's officers and crewmembers listed within subpart (a) of this paragraph ("Paragraph 3") ***shall remain within the jurisdiction*** of the U.S. District Court –District of Rhode Island pursuant to the terms set forth within the below subparts. (a) The ship's officers and crewmembers pertaining to this paragraph are:

1) Porquez, Jose Ervin M. – Master;
2) Barrido, Andrew M. – Chief Officer;
3) Sepelagio, Bernard G. – Second Officer;
4) Bigtas, Andrew D. – Third Officer;
5) Penaflor, Roberto C. – Chief Engineer;
6) Dela Cruz, Gilbert A. – Second Engineer;
7) Laxamana, Julius P. – Third Engineer;
8) Bitacura, Bonn Joshua S. – Fourth Engineer;
9) Tykhevych, Yuri – Electrician;
10) Taneca, Jeromy A. – Oiler;
11) Labordo, Harley A. – Oiler;
12) Baldevarona, Edwin T. – Oiler,"

*Id*. at ¶3, lines 104-120. (emphasis added).

26. Petitioners requested numerous times for the Coast Guard to reconsider its demand for all twelve (12) crewmembers to be required to disembark the Vessel. All requests were denied.

27. The Agreement on Security further imposed the following condition, "(c) Owner and Operator agree that the Vessel shall not depart forthwith for the remainder of its voyage until the aforementioned ship's officers and crewmembers of the Vessel have been granted immigration status necessary to enable them to remain in the United States commensurate with the duration of this Agreement. Owner and Operator agree that no ship's officer or crewmember will be allowed to remain aboard that Vessel when it departs from the United States . . ." *Id*. at ¶ 3(c).

28. Arrangements for the necessary immigration status or parole into the United States takes no more than a few hours and can (and often is) completed quicker.

29. It was the Defendant that demanded twelve (12) crewmembers remain in the district and has known about this obligation to parole these foreign seafarers into the United States for weeks. Indeed, the first draft of the Agreement on Security was circulated on March 9, 2022 by Lt. Paul Milliken of USCG District One Legal and listed all twelve (12) crewmembers required to remain in the district.

30. Accordingly, from no later than March 9, 2022, and upon information and belief, much earlier than that (dating back to the February 20, 2022 detention), the Defendant has known exactly which foreign seafarers it was planning to require remain in the district.

31. From no later than March 18, 2022, the Defendant had a signed Agreement on Security and the surety bond in hand. At that point, the Petitioners had complied with all requirements for the reinstatement of the Vessel's departure clearance. The only remaining

requirement was for the twelve (12) crewmembers required by the Defendant to remain in the United States to disembark the Vessel.

32. Replacement officers and crewmembers arrived onboard during the course of Monday March 21 – Tuesday March 22, 2022.

33. On March 23, 2022, Petitioners, through their agent, confirmed to the Coast Guard and Customs and Border Protection that all handovers had been completed by the crew and that the twelve (12) individuals required by the Defendant to disembark their shipboard homes were ready to proceed to the Customs office so that the detained seafarers could be 'paroled' into the United States and then proceed to their hotel in Warwick, Rhode Island while the Defendant continued its investigation.

34. Notwithstanding, the government has failed, neglected, and/or refused to process the detained seafarers and/or permit them to disembark the Vessel. Worse, the government has failed, neglected, and/or refused to provide a substantive update as to what is causing the delay and/or when it may be resolved. *See* **Exhibit 4 and Exhibit 5**.

35. Petitioners have continuously sought information relating to the delay and have provided repeated notice that the delay of the Vessel is unreasonable and leading to a minimum of $24,000 per day in damages and that if the Vessel is not underway within today <u>at the very latest</u>, she will miss her next commercial commitment. This will result in significant damages, which will be at least seven and likely eight figures in quantum. *See* **Exhibit 6**.

36. Again, the government has neglected, refused, and/or failed to respond to any alternative arrangements for the disembarking crew. *Id.*

37. Furthermore, Petitioners have made clear to the Defendant that having twelve (12) extra crewmembers onboard the Vessel is unreasonable and is a strain on the crew and Vessel, which is not meant to accommodate that many extra people. *See* **Exhibit 7**.

38. The government has engaged in a series of agency finger-pointing and blaming as to what is going on with processing these crewmembers, but has yet to provide a substantive answer as to why the crewmembers are not being permitted to disembark and the Vessel permitted to sail.

39. As a result of the unreasonable day delay to the Vessel, Petitioners have incurred direct damages estimated to be no less than $72,000 to date for off-hire, bunkers, wages, accommodation and victualing. These damages continue to accrue at an amount of no less than $24,000 per day.

40. In addition, the consequential damages resulting from the reputational and business damages caused by the Vessel missing its subsequent obligations as a result of the government's unreasonable delay are not yet quantifiable, but may well be significant.

**COUNT ONE – DECLARATORY JUDGMENT**
**Compel the Reinstatement of the Vessel's Departure Clearance and**
**Permit the Vessel to Sail**

41. Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Petition.

42. Pursuant to 28 U.S.C. § 2201, an actual case or controversy exists between the Petitioners and the Defendant, as a result of the claims of the government against Petitioners relating to the alleged violation(s) of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et. seq*. and the Defendant's failure to abide by the requirements of the Agreement on Security entered on March 18, 2022.

43. Petitioners request that the Court enter an Order finding that Petitioners have complied with all obligations of the Agreement on Security and directing the Defendant to immediately do the necessary to parole the twelve (12) crewmembers into the United States and reinstate the Vessel's departure clearance so that the Vessel may continue its journey and trade.

### COUNT TWO - DECLARATORY JUDGMENT
**Agreement on Security is Null and Void *Ab Initio***

44. Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Petition.

45. Pursuant to 28 U.S.C. § 2201, an actual case or controversy exists between the Petitioners and the Defendant, as a result of the claims of the government against Petitioners relating to the alleged violation(s) of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et. seq*. and the Defendant's failure to abide by the requirements of the Agreement on Security entered on March 18, 2022.

46. Strictly in the alternative to Count One, Petitioners request that the Court enter judgment finding that:

   a. Defendant imposed non-negotiable obligations on Petitioners, to among other things, agree that twelve (12) crewmembers would not be able to depart with the Vessel and would have to remain in the District of Rhode Island;

   b. Petitioners complied with all obligations and requirements of the Agreement on Security, yet the Defendant failed, neglected, and/or refused to do the necessary to process the twelve (12) crewmembers so that they could remain in the District of Rhode Island consistent with the Defendant's requirements;

   c. Defendant failed to reinstate the Vessel's departure clearance as required by the Agreement on Security;

d. The Agreement on Security is null and void *ab initio* as the government forced Petitioners into an agreement which it could not perform and had no information, knowledge, confirmation, and/or ability to ensure that the agreement would ever be performed;

e. That the USD 1,500,000 surety bond be immediately returned to Petitioners; and

f. That Petitioners are no longer obligated to comply with the obligations and terms contained in the Agreement on Security.

## COUNT THREE – BREACH OF CONTRACT

47. Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Complaint.

48. The Defendant's failure, refusal, and/or neglect to expeditiously and reasonably process the parole of the twelve (12) detained crewmembers was a breach of the Agreement on Security.

49. Specifically, the United States breached, *inter alia*, Clauses 1, 3, and 4 of the Agreement on Security.

50. As a result of the Defendant's breach of contract, Petitioners have suffered significant damages and losses.

51. Petitioners request that the Court enter judgment finding that the government breached the Agreement on Security.

## COUNT FOUR– COMPENSATION FOR UNREASONABLE DELAY

52. Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Complaint.

53. Galissas Trading is the Owner of the M/T GALISSAS, which was unreasonably delayed from the period of March 23, 2022 and continues to be unreasonably delayed, incurring damages, losses, and expenses not yet fully quantified or quantifiable.

54. Galissas Trading is pursuing this action for compensation as authorized by *inter alia*, 33 U.S.C. § 1904(h).

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully request that the Court enter a judgment:

A. Granting Count One and requiring the Defendant to reinstate the Vessel's departure clearance;

B. In the alternative, Granting Count Two and declaring the March 18, 2022 Agreement on Security void *ab initio* and directing the return of the USD 1,500,000 surety bond to Petitioners;

B. Finding the government in breach of the Agreement on Security;

C. Granting Petitioner Galissas Trading compensation for the losses, expenses, damages, and costs incurred as a result of the government's unreasonable delay of the M/T GALISSAS pursuant to 33 U.S.C. § 1904(h);

D. Awarding Petitioners their attorneys' fees and interest; and

E. Awarding Petitioners such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: March 25, 2022                              Respectfully submitted,

                                                   ECKLAND & BLANDO LLP

                                                   /s/ SAMUEL P. BLATCHLEY
                                                   Samuel P. Blatchley, Esq.
                                                   (RI Bar No. 8284)
                                                   22 Boston Wharf Road, 7th Floor
                                                   Boston, MA 02210
                                                   (617) 217-6936
                                                   sblatchley@ecklandblando.com

OF COUNSEL

**CHALOS & CO, P.C.**

George M. Chalos, Esq.
Briton P. Sparkman, Esq.
*Pro Hac Vice Forthcoming*
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel:    516-714-4300
Fax:    516-750-9051
Email: gmc@chaloslaw.com
       bsparkman@chaloslaw.com

       *Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

Pursuant to LR Gen 309, I hereby certify that on March 25, 2022, a copy of the foregoing was filed through the ECF system and it is available for viewing and downloading from the ECF system such that all appearing counsel have been served with this document by electronic means.

                                                   /s/ SAMUEL P. BLATCHLEY
                                                   Samuel P. Blatchley, Esq.
                                                   (RI Bar No. 8284)